UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| MICHAEL D. CALMESE, | No. 3:13-cv-01042-HU |
| Plaintiff, | **FINDINGS AND RECOMMENDATION** |
| v. | |
| ANTHONY E. MCNAMER, aka ANTHONY DAVIS, and THE OREGON STATE BAR PROFESSIONAL LIABILITY FUND, | |
| Defendants. | |

Michael Calmese
3046 N. 32nd Street, Apt. 321
Phoenix, AZ 85018
Telephone: (602) 954-9518

    Pro Se Plaintiff


Jonathan M. Radmacher
Email: jonathanr@mcewengisvold.com
MCEWEN GISVOLD LLP
1100 S.W. Sixth Avenue, Suite 1600
Portland, OR 97204
Telephone: (503) 226-7321
Facsimile: (503) 243-2687

    Attorney for Defendant
    Anthony E. McNamer

Page 1 - FINDINGS AND RECOMMENDATION

HUBEL, Magistrate Judge:

Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), Defendant Anthony McNamer ("McNamer") moves to dismiss Plaintiff Michael Calmese's ("Calmese") single-count amended complaint for breach of contract, which was originally styled as a single-count complaint for legal malpractice, on the ground that it is barred by the applicable statute of limitations.[1]  For the reasons that follow, McNamer's motion (Docket No. 12) to dismiss should be granted.

## I. FACTS AND PROCEDURAL HISTORY

The impetus behind the filing of the underlying complaint is Calmese's contention that McNamer negligently represented his interests in *adidas America, Inc. v. Calmese*, No. 3:08-cv-00091-BR (D. Or. filed Jan. 18, 2008).  In that proceeding, adidas America, Inc. ("adidas") sought to obtain a declaration that its use of the phrase "prove it" did not constitute infringement under 15 U.S.C. § 1114 ("Count One"), nor was it a false designation of origin of Calmese's "Prove It!" trademark under 15 U.S.C. § 1125(a) ("Count Two").  *See Adidas Am., Inc. v. Calmese*, No. 08-CV-91-BR, 2011 WL 1832948, at *1 (D. Or. May 13, 2011).  In addition, adidas sought the cancellation of Calmese's trademark under 15 U.S.C. § 1119 ("Count Three").  *Id.*

In his answer, filed on February 12, 2008, Calmese asserted counterclaims against adidas for trademark infringement under §

---

[1] As discussed *infra*, Part III, by agreement of the parties and pursuant to Calmese's motions to voluntary dismiss, the Oregon State Bar Professional Liability Fund ("the PLF") is to be dismissed from the instant action with prejudice.  Calmese and McNamer confirmed as much at the motion hearing.

Page 2 - FINDINGS AND RECOMMENDATION

1114 and for violation of Oregon's Unlawful Trade Practices Act ("UTPA"). *Id.* By way of an opinion and order dated October 8, 2009, the district court granted summary judgment in favor of adidas on Counts One and Two and in favor of adidas and against Calmese on both of Calmese's counterclaims.[2] *Id.* Count Three was tried to the court in November 2010. *Id.* Although adidas failed to carry its burden of proof at trial on Count Three, the court determined that the case was exceptional and awarded adidas $75,000 in attorney's fees on May 13, 2011. *Id*.

In an unpublished opinion dated November 21, 2012, the Ninth Circuit affirmed the district court's judgment, stating, among other things:

> The district court did not abuse its discretion in awarding a portion of Adidas's attorney's fees in light of Calmese's litigation tactics and repetitive filings, and because the record supports the amount of fees awarded.
>
> Calmese's contention that judgment should be vacated because of fraud upon the court is unpersuasive in light of Calmese's failure to show an unconscionable plan or scheme which is designed to improperly influence the court in its decision.
>
> Calmese's contentions regarding his counsel's performance and withdrawal are [similarly] unpersuasive.

*Adidas Am., Inc. v. Calmese*, 489 F. App'x 177, 178 (9th Cir. 2012) (internal citations and quotation marks omitted).

Calmese commenced the present action against McNamer on June 20, 2013, alleging a single cause of action for legal malpractice.

---

[2] The opinion and order was originally filed on October 8, 2009, and re-filed five days later, on October 13, 2009, after a clerical error was discovered in the record. The opinion published by Westlaw utilizes the former date.

Page 3 - FINDINGS AND RECOMMENDATION

Notably, Calmese presented arguments in the original complaint as to why the statute of limitations on his legal malpractice claim had not expired. (Compl. ¶¶ 152-165.) On August 5, 2013, Calmese filed an amended complaint, restyled as an action for breach of contract, against McNamer and the PLF. However, the factual allegations underlying Calmese's claim against McNamer remain unchanged.

As described in the amended complaint, McNamer filed a notice of appearance in the *adidas* litigation on December 15, 2008, approximately one month after adidas filed its motion for summary judgment. In exchange for providing "high quality legal counsel" and "assisting Mr. Calmese in connection with his defense and prosecution of adidas" (First Am. Compl. ¶ 7), McNamer was to receive thirty-three percent of any damages awarded should Calmese prevail on his counterclaims, "or the total amount awarded as attorney's fees, whichever [wa]s greater" (First Am. Compl. ¶ 16).

By email dated December 26, 2008, Calmese informed McNamer that the Patent and Trademark Office's ("PTO") "ruling [on] application No. 77073502 . . . [should] be used in Calmese's argument against adidas' motion for summary judgment." (First Am. Compl. ¶ 18.) That application was filed by BR Designs, Inc. ("BR Designs"), who sought to register the mark "BR DESIGNS PROVE IT." (First Am. Compl. Ex. A at 1.) The PTO declined to register BR Design's mark based on "a likelihood of confusion with the mark in U.S. Registration Nos. 2202454," which pertains to Calmese's

Page 4 - FINDINGS AND RECOMMENDATION

federally registered trademark "PROVE IT!".[3]  (First Am. Compl. Ex. A at 2.)

On January 6, 2009, adidas discovered that McNamer used to go by the name of Anthony Davis.  Apparently, McNamer had previously represented adidas in some capacity and adidas "felt it was disingenuous of Anthony McNamer to take on [a] matter[] adverse to adidas without notifying adidas of his name change." (First Am. Compl. ¶ 20.)  Eight days later, on January 14, 2009, McNamer "materially breached" the contingency-fee agreement by failing to submit the PTO's ruling on BR Design's application in opposition to adidas' motion for summary judgment.  (First Am. Compl. ¶ 22.)  Calmese "discovered" the breach on February 18, 2009, when he reviewed a copy of the opposition brief filed by McNamer.  (First Am. Compl. ¶ 25.)

On March 26, 2009, McNamer "again materially breached" the contingency-fee agreement by failing to submit the PTO's ruling on BR Design's application in opposition to a supplemental summary judgment brief filed by adidas.[4]  (First Am. Compl. ¶ 29.)  About a month later, on April 27, 2009, McNamer confirmed that he "repeatedly breached" the agreement based on his "distorted belief

---

[3] Generally, "decisions of the PTO are not binding on the Court, but are entitled to 'consideration' by the Court." *Self-Ins. Inst. of Am., Inc. v. Software & Info. Indus. Ass'n*, 208 F. Supp. 2d 1058, 1072 (C.D. Cal. 2000) (citation omitted).

[4] The Court takes notice of filings from the *adidas* case, including the second opposition filed by McNamer after adidas was granted leave to file a supplemental summary judgment brief.  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (holding that judicial notice of court filings and other matters of public record is proper); FED. R. EVID. 201(c)(2) (explaining that a court may take judicial notice on its own).

Page 5 - FINDINGS AND RECOMMENDATION

that the PTO's previous rulings . . . d[id] not matter." (First Am. Compl. ¶ 32.)

On July 6, 2009, McNamer filed an ex parte motion to withdraw as counsel in the *adidas* litigation, citing Calmese's consent and desire to engage substitute counsel. McNamer's motion also indicates that Calmese sent an email to Judge Stewart and adidas' counsel stating that McNamer was being replaced, Calmese was informed of all upcoming deadlines, and Calmese instructed McNamer to immediately return all of his files by the following day. Judge Stewart granted McNamer's ex parte motion to withdraw as counsel on July 7, 2009. Calmese, however, ended up representing himself throughout the remainder of the adidas case.

On July 16, 2009, Calmese discovered that McNamer had changed his name. Calmese promptly informed the Court (by way of a motion to dismiss) about the undisclosed conflict of interest, as well McNamer's failure to submit the PTO's ruling in opposition to adidas' motion for summary judgment. (First Am. Compl. ¶¶ 36-38.)

In an opinion and order dated October 8, 2009, Judge Brown acknowledged that Calmese objected to Judge Stewart's findings and recommendation "on the ground that [his] attorney, who ha[d] since withdrawn, had an alleged conflict of interest that resulted in his failure to file several exhibits in response to [adidas'] summary-judgment motion." *Adidas Am., Inc. v. Calmese*, 662 F. Supp. 2d 1294, 1301 (D. Or. 2009).

On December 16, 2009, an attorney from Arizona allegedly confirmed McNamer's substandard performance and potential breach of the contingency-fee agreement by stating the following in an email to Calmese: "And, I read the [district court]'s opinion that adidas

Page 6 - FINDINGS AND RECOMMENDATION

did not infringe your trademark (you don't have a copyright). From it I can see, you have a bunch of poor lawyers, that's for sure." (First Am. Compl. ¶ 41.) It was not until sometime in August 2010, however, that Calmese "discovered the District Court overlooked the PTO's previous rulings due to [McNamer]'s breach of [the contingency-fee] agreement." (First Am. Compl. ¶ 40.) Shortly thereafter, Calmese "filed a third motion for reconsideration to correct the District Court record and Defendant Anthony McNamer's breach of [a]greement." (First Am. Compl. ¶ 43.)

On November 2, 2010, McNamer is alleged to have again breached the contingency-fee agreement by failing to represent Calmese at the trial on Count Three in the *adidas* case. (First Am. Compl. ¶ 57.) Judgment was entered and mailed to Calmese by the clerk's office on December 14, 2010, and Calmese filed a notice of appeal on January 18, 2011. As discussed above, the district court went on to award adidas $75,000 post-judgment, in prevailing party fees on May 13, 2011. Calmese alleges this was "as a direct result of [McNamer]'s material breach damaging Calmese." (First Am. Compl. ¶ 63.) The Ninth Circuit affirmed the district court's judgment in favor of adidas on November 21, 2012.[5]

## II. LEGAL STANDARD

A court may dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, the court must

---

[5] Also on May 13, 2011, the clerk's office mailed Calmese a copy of Judge Brown's opinion and order awarding adidas $75,000 in prevailing party fees. Calmese filed an amended notice of appeal less than a month later, on June 3, 2011.

Page 7 - FINDINGS AND RECOMMENDATION

accept all of the claimant's material factual allegations as true and view all facts in the light most favorable to the claimant. *Reynolds v. Giusto*, No. 08-CV-6261, 2009 WL 2523727, at *1 (D. Or. Aug. 18, 2009). The Supreme Court addressed the proper pleading standard under Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). *Twombly* established the need to include facts sufficient in the pleadings to give proper notice of the claim and its basis: "While a complaint attacked [under] Rule 12(b)(6) . . . does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (brackets omitted).

Since *Twombly*, the Supreme Court has clarified that the pleading standard announced therein is generally applicable to cases governed by the Rules, not only to those cases involving antitrust allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). The *Iqbal* court explained that *Twombly* was guided by two specific principles. First, although the court must accept as true all facts asserted in a pleading, it need not accept as true any legal conclusion set forth in a pleading. *Id*. Second, the complaint must set forth facts supporting a plausible claim for relief and not merely a possible claim for relief. *Id*. The court instructed that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1949-50 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)). The court

Page 8 - FINDINGS AND RECOMMENDATION

concluded: "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 1950.

The Ninth Circuit further explained the *Twombly-Iqbal* standard in *Moss v. U.S. Secret Service*, 572 F.3d 962 (9th Cir. 2009). The *Moss* court reaffirmed the *Iqbal* holding that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Moss*, 572 F.3d at 969 (quoting *Iqbal*, 129 S. Ct. at 1949). The court in *Moss* concluded by stating: "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inference from that content must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss*, 572 F.3d at 969.

### III. PRELIMINARY PROCEDURAL MATTERS

There are two procedural matters that must be addressed before proceeding to the merits of McNamer's motion to dismiss. First, Calmese has filed two motions to voluntarily dismiss the PLF from this proceeding. In the most recently filed motion, Calmese states: "Calmese and McNamer's legal team have conferred and agreed to dismiss the PLF. Therefore, in an effort to narrow the issues down at the [upcoming motion hearing] by dismissing the PLF, Calmese respectfully and 'voluntarily' request[s] that this Honorable Court dismiss the PLF from this matter immediately." (Pl.'s Voluntary Mot. Dismiss at 2.)

It appears that the PLF was only included as a named defendant because it "insures Defendant Anthony E. McNamer . . . [and can] be held liable for any and all amounts awarded to Plaintiff Calmese as a result of Defendant's Breach of Agreement." (First Am. Compl. ¶¶ 82-83.) The joinder of a liability insurer is inappropriate in this case the parties agree, and the Court should grant Calmese's motions (Docket Nos. 11 and 19) to voluntarily dismiss the PLF.

Second, in an unrelated Lanham Act case involving Calmese, who was appearing pro se, and Mine O'Mine ("MOM"), Judge Dawson of the District of Nevada awarded MOM costs and fees in the amount of $47,873.50. *Mine O'Mine, Inc. v. Calmese*, 2012 WL 1279827, at *4 (D. Nev. Apr. 16, 2012), *aff'd*, 489 F. App'x 175 (9th Cir. 2012). In paragraphs sixty-four through sixty-six of his amended complaint, Calmese claims that the imposition of fees in *Mine O'Mine* was based on McNamer's breach of the contingency-fee agreement in the *adidas* case. Judge Dawson's opinion and order tells a different story, however:

> Mr. Calmese has been involved in a pattern of litigation against athletic companies, sports teams, and others and has filed numerous trademark lawsuits. In these cases, Mr. Calmese has demonstrated a habit of disregarding courtesy to opposing counsel, unscrupulous conduct relating to settlement, wasteful litigation practices, and unwillingness to follow court orders. In 2009 Judge Roslyn Silver warned Mr. Calmese that his conduct before her 'came perilously close to warranting § 1117(a) attorneys' fees.' In 2011, Judge Brown of the District of Oregon determined that Mr. Calmese had crossed the line and awarded $75,000 in attorneys' fees to Adidas pursuant to § 1117(a). Judge Brown found that Mr. Calmese's 'unreasonable and vexatious behavior' showed a lack of respect for the legal process, for the court, and for opposing counsel.
>
> Mr. Calmese seems to think that nuisance litigation of the type on display here and in Nike and Adidas cases can be leveraged into lucrative settlements. In an email to MOM's counsel, Mr. Calmese stated 'Summary Judgment

Page 10 - FINDINGS AND RECOMMENDATION

>     cost you nearly $200,000 in the Micheal (sic) Calmese v. Nike Inc., and I was the Plaintiff. NOW, I am the Defendant, $50K seems very reasonable under my current circumstances.' As noted above, Mr. Calmese's conduct in this litigation has inconvenienced and caused economic hardship to MOM. Of particular concern to the Court are Mr. Calmese's sleight of hand tactics in settlement negotiations, backsliding on an agreement for an extension, dilatory conduct in relation to depositions, and unwillingness to respect Judge Leen's instructions on filing discovery motions. This type of conduct creates inconvenience and waste which negatively affect opposing parties, the Court, and litigants in other cases with meritorious claims
>
>     Mr. Calmese argues that 'the fact that Calmese appeared pro se does excuse his conduct.' The Court disagrees. Pro se status is no excuse for discourteous and unreasonable behavior. Mr. Calmese is a frequent litigant who has been warned about his conduct by several judges and has had an award of attorneys' fees levied against him by Judge Brown. Accordingly, the Court finds that this case is exceptional for purposes of § 1117(a).

*Id.* at *3 (internal citations omitted).

It's clear that McNamer played no role in the *Mine O'Mine* case or Judge Dawson's decision to award fees under § 1117(a). Rather, it was Calmese's own questionable conduct and litigation tactics that led to the imposition of fees. Because the allegations in the amended complaint concerning the *Mine O'Mine* case are unrelated and thus irrelevant to this case, and do not involve the individual defendant, the Court will not consider them here. The timeliness of Calmese's claim must be evaluated based on allegations that pertain to actions taken by McNamer in the *adidas* case.

## IV. DISCUSSION

McNamer moves to dismiss Calmese's single-count amended complaint based on the expiration of the statute of limitations. The Ninth Circuit has made clear that, "[i]f the running of the statute [of limitations] is apparent on the face of the complaint, the defense may be raised by a motion to dismiss." *Jablon v. Dean*

Page 11 - FINDINGS AND RECOMMENDATION

*Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). Dismissal on statute of limitations grounds can be granted under Rule 12(b)(6) "'only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.'" *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999) (quoting *Vaughan v. Grijalva*, 927 F.2d 476, 478 (9th Cir. 1991))

As discussed *supra*, Calmese's single-count original complaint was styled as an action for legal malpractice, but the single-count amended complaint was restyled as an action for breach of contract. McNamer contends that Calmese is attempting to circumvent the two-year limitations period of ORS 12.110. *See generally Stevens v. Bispham*, 316 Or. 221, 227 (1993) ("A claim for professional negligence in the form of legal malpractice must be commenced within two years of the date on which the claim accrues"). In *Securities-Intermountain, Inc. v. Sunset Fuel Co.*, 289 Or. 243 (1980), the Oregon Supreme Court explained that,

> [i]f the alleged contract merely incorporates by reference or by implication a general standard of skill and care to which the defendant would be bound independent of the contract, and the alleged breach would also be a breach of this noncontractual duty, then ORS 12.110 applies. Conversely, the parties may have spelled out the performance expected by the plaintiff and promised by the defendant in terms that commit the defendant to this performance without reference to and irrespective of any general standard. Such a defendant would be liable on the contract whether he was negligent or not, and regardless of facts that might excuse him from tort liability. . . . In such cases, there is no reason why an action upon the contract may not be commenced [within] the six years allowed by ORS 12.080.

*Id.* at 259-60 (internal citation omitted).

Page 12 - FINDINGS AND RECOMMENDATION

Attached to the amended complaint as Exhibit E is the contingency-fee agreement entered into by Calmese and McNamer. That agreement provides, in relevant part:

> You agree to cooperate fully with us in the resolution of this dispute.  Although no settlement will be made without your consent, you agree that we will have full control over all efforts and proceedings and you will not make any effort to process the case except through us.
>
> You understand we have made no promise or guarantee concerning the outcome of your claim. . . .
>
>      . . . .
>
> . . . We look forward to working with you and will do our best to provide you with prompt, high quality legal counsel. . . .

(First Am. Compl. Ex. E at 2.)  In the Court's view, the contingency-fee agreement refers to nothing more than the general standard of skill and care to which any attorney would be bound. ORS 12.110 should therefore be applied to Calmese's claim in accordance with the Oregon Supreme Court's guidance in *Securities-Intermountain*.

Oregon courts use a "discovery rule" in order "to determine when a claim for legal malpractice accrues." *Kaseberg v. Davis Wright Tremaine, LLP*, 351 Or. 270, 277 (2011).  In the words of the *Kaseberg* court,

> [t]he statute of limitations does not begin to run until the client knows or, in the exercise of reasonable care, should know every fact which it would be necessary for the client to prove in order to support his right to judgment.  The three elements of a claim for professional negligence are (1) harm, (2) causation, and (3) tortious conduct.  Thus, a claim for legal negligence accrues when the client both suffers damage and knows or, in the exercise of reasonable care, should know that the substantial damage actually suffered was caused by the lawyer's acts or omissions.

Page 13 - FINDINGS AND RECOMMENDATION

> The discovery rule applies an objective standard—how a reasonable person of ordinary prudence would have acted in the same or a similar situation. The discovery rule does not require actual knowledge; however, mere suspicion also is insufficient. The statute of limitations begins to run when the plaintiff knows or, in the exercise of reasonable care, should have known facts that would make a reasonable person aware of a substantial possibility that each of the elements of a claim exists.
>
> Application of the discovery rule presents a factual question for determination by a jury unless the only conclusion that a jury could reach is that the plaintiff knew or should have known the critical facts at a specified time and did not file suit within the requisite time thereafter.

*Id.* at 277-78 (internal citations, quotation marks and brackets omitted).

When read most liberally in Calmese's favor, the amended complaint alleges that: (1) McNamer submitted his memorandum and supporting materials in opposition to adidas' motion for summary judgment on January 14, 2009; (2) in an email response dated April 27, 2009, McNamer reiterated to Calmese that he felt the PTO's previously ruling did not matter because the district court would make the final decision about the validity of his trademark; (3) (3) sometime during August 2010, Calmese discovered that McNamer breached the contingency-fee agreement by causing the district court to overlook the PTO's previous ruling; and (4) adidas was awarded $75,000 in attorney's fees by the district court on May 13, 2011, "as a direct result of [McNamer]'s breach" of the contingency-fee agreement. (First Am. Compl. ¶¶ 22, 32-33, 40, 63.)

The foregoing demonstrates that the statute of limitations on Calmese's legal malpractice claim began to run, as a matter of law, no later than May 13, 2011. *See Kaseberg*, 351 Or. at 785 ("legal

Page 14 - FINDINGS AND RECOMMENDATION

malpractice claim accrues as a matter of law on determination of case that results from attorney's advice") (citation omitted). The instant action is distinguishable from *Fliegel v. Davis*, 73 Or. App. 546, *rev. den.*, 299 Or. 583 (1985), where the Oregon Court of Appeals stated: "It is unrealistic to require a client to recognize that the lawyer's advice is bad, even after being sued for acting on it, until there no longer exists a realistic possibility that a court will hold that the advice was good." *Id.* at 549.

Unlike *Fliegel*, where there was no evidence that the plaintiff "could have known that its attorneys' advice was negligent," *id.*, Calmese claims that an attorney from Arizona advised Calmese of McNamer's substandard legal performance in mid-December 2009. (First Am. Compl. ¶ 41.) Calmese goes on to note that the attorney from Arizona "may be called as an expert witness . . . to testify against Anthony E. McNamer for his very poor representation of Mr. Calmese." (First Am. Compl. ¶ 42.) The mid-December 2009 email correspondence between Calmese and the attorney from Arizona indicates that the attorney explicitly declined Calmese's invitation to serve as his expert witness. (First Am. Compl. Ex. J at 1.)

The above correspondence brings this case into line with *Godfrey v. Bick & Monte, P.C.*, 77 Or. App. 429, *rev. den.*, 301 Or. 165 (1986), where the Oregon Court of Appeals distinguished *Fliegel* on the ground that another attorney had advised of a possible malpractice action within two years of the plaintiff receiving notice of additional tax liability from the Internal Revenue Service due to the fact that his prior attorney and public accountant negligently structured a corporate stock transaction.

Page 15 - FINDINGS AND RECOMMENDATION

*Id.* at 433. *Godfrey* also distinguished *Fliegel* on the ground that the defendants in that case continued to represent the plaintiff through the appeal of the litigation (unlike the present case), which was a factor weighing in favor of delaying commencement of the running of the statute of limitations until resolution of the underlying lawsuit.[6]  *Id.* at 433-34.

While the foregoing is ample reason to dismiss this case based on the statute of limitations, there is more. Calmese received the judgment entered by Judge Brown within thirty-five days of its entry, as evidenced by his filing of an appeal to the Ninth Circuit. He also received the May 13, 2011 opinion and order within twenty-one days of its entry, as evidenced by his filing of an amended appeal to the Ninth Circuit on June 3, 2011. More than two years later, on June 20, 2013, Calmese commenced this case by filing the complaint. Calmese cannot escape the knowledge of the harm and the cause he alleges here, McNamer's alleged breach of his professional duty. Whatever the merits might be of Calmese's allegations, his commencement of this case is barred by the statute of limitations and this case should be dismissed. *Cf. St. Paul Fire & Marine Ins. v. Speerstra*, 63 Or. App. 533, 538-39 (1983) ("Even if the appeal [with the same attorneys] had been successful and a more favorable verdict had been rendered in plaintiffs'

---

[6] *Godfrey* did note that the "plaintiff [wa]s relying not on a judicial determination but on a compromise settlement [with the Internal Revenue Service] as the starting point for the running of the Statute of Limitations. [And] [u]nlike a judicial determination, that compromise provide[d] no new insight as to whether defendants were negligent." *Id.* at 434. But *Godfrey* reiterated that the "[p]laintiff knew that he was damaged and that defendants were the cause of his damage well before that time and more than two years before the commencement of this action." *Id.*

Page 16 - FINDINGS AND RECOMMENDATION

behalf . . . on retrial, plaintiffs nevertheless suffered harm at the time of the entry of the judgment. At that time, they were required to pay the $800,000 judgment or the cost of an appeal (and the cost of a new trial if the appeal were successful). We conclude that, as a matter of law, plaintiffs had incurred actionable harm by the time of the entry of the judgment.")

## V. CONCLUSION

For the reasons stated, McNamer's motion (Docket No. 12) to dismiss should be granted and Calmese's motions (Docket Nos. 11 and 19) to voluntarily dismiss the PLF should be granted.

## VI. SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due **April 14, 2014.** If no objections are filed, then the Findings and Recommendation will go under advisement on that date. If objections are filed, then a response is due **May 1, 2014.** When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this  24th  day of March, 2014.

/s/ Dennis J. Hubel
_____
DENNIS J. HUBEL
United States Magistrate Judge

Page 17 - FINDINGS AND RECOMMENDATION